BEREZOSKI, APPELLEE AND CROSS-APPELLANT, *v.* OHIO STATE MEDICAL BOARD, APPELLANT AND CROSS-APPELLEE.■

(No. 87 CA 92 — Decided
May 18, 1988.)

*Lawrence Abramson* and *David W. Wenger,* for appellee and cross-appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Christopher M. Culley* and *Cheryl J. Nester,* for appellant and cross-appellee.

WOLFF, J. The Ohio State Medical Board has appealed, and Robert N. Berezoski has cross-appealed, from the judgment of the Court of Common Pleas of Greene County. In an administrative appeal pursuant to R.C. 119.12, the trial court reversed the board's revocation of Berezoski's license to practice medicine and surgery, and imposed lesser sanctions: a one-year suspension and a requirement of forty hours community service annually for five years. The one-year suspension was imposed retroactively to run concurrently with the year and two days Berezoski had spent in the state penitentiary as a result of seven felony convictions.

The board advances three assignments of error; Berezoski advances one cross-assignment of error.

Before addressing the assignments of error urged upon this court, we must sketch the history of this case.

Berezoski was a licensed physician and surgeon. For a time, he was married to Diane Berezoski, who was the mother of Erin Rothwell, the child of a prior marriage. Berezoski's marriage to Diane Berezoski ended in divorce in June 1984.

On January 16, 1985, Berezoski was indicted on ten counts of rape and seven counts of gross sexual imposition, all felonies, and all involving Erin Rothwell. A jury found Berezoski not guilty of the ten alleged rapes and guilty of the seven alleged gross sexual impositions. Berezoski was sentenced to seven consecutive one-year sentences in the penitentiary. Berezoski appealed these convictions.

After the criminal proceedings were concluded at the trial level, the State Medical Board initiated proceedings to discipline Berezoski pursuant to R.C. 4731.22(B)(9), which then, and at all times pertinent to this case, provided:

"The board, by a vote of not less than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate, refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:

"* * *

"(9) Conviction of a felony whether or not committed in the course of his practice."

Eventually, a hearing was conducted before a hearing examiner for the board, Lauren Lubow, Esq.

The state's evidence was confined to the fact of the seven felony convictions. Berezoski's evidence consisted of the fact of the ten not guilty findings on the rape charges, together with testimony from Berezoski's present wife Barbara, her daughter Christine

Collins, and Jeffrey Doyle. The testimony of these witnesses tended to show that the felony convictions were the product of an untruthful Erin Rothwell, manipulated by her vindictive and avaricious mother, Diane Berezoski. Berezoski's appellate brief attacking the convictions was also accepted into evidence.

In urging administrative action short of revocation, Berezoski's counsel urged the hearing examiner to consider the base motivation behind the prosecution, and the likelihood that the convictions would be reversed.

In her report and recommendation to the board, the hearing examiner's single finding was confined to the fact of the seven felony convictions. Her conclusion stated in part:

"Dr. Berezoski currently stands convicted of seven (7) counts of gross sexual imposition involving a girl under the age of thirteen. Dr. Berezoski had his hearing before a jury in Montgomery County and that jury, after careful deliberation, did render seven guilty verdicts against Dr. Berezoski. The State Medical Board must presume that the Court of Common Pleas carefully addressed all the issues before it and that the jury and the court carefully assessed the credibility of all the witnesses before it. Dr. Berezoski's conviction establishes conclusively that the crimes alleged took place and it is inappropriate to retry this sexual imposition case."

She recommended that Berezoski's license be revoked. In a letter to his counsel she stated:

"Pursuant to Section 119.09, Ohio Revised Code, please find enclosed a copy of the Report and Recommendation of Lauren Lubow, Esquire, Hearing Examiner, State Medical Board of Ohio, concerning the matter of Doctor Berezoski's adjudication hearing on February 21, 1986.

"Within ten (10) days of receipt of this copy of the written Report and Recommendation, you may file with the State Medical Board of Ohio written objections to the Report and Recommendation, and the written objections shall be considered by the State Medical Board at its July 9, 1986 meeting before approving, modifying, or disapproving the Recommendation."

Berezoski's counsel did file written objections with the board. The objections complained of the hearing examiner's failure to make findings as to the credibility of Berezoski's witnesses and the significance of their testimony. It was again urged that this evidence, which strongly suggested the unreliability of the convictions, should result in less severe discipline than revocation:

"It is submitted that the testimony of the witnesses which the Hearing Examiner has apparently wholly ignored, together with the content of the exhibits introduced or proferred [sic] by Dr. Berezoski, disclose that there was substantial question with respect to the conviction[s] of Dr. Berezoski. In light of this question, it was argued to the Hearing Examiner, and again to this Board, that a more appropriate action for the Board to take would have been to suspend Dr. Berezoski's license conditioned upon the reversal of his conviction[s]. Under the Hearing Examiner's recommendation, even if Dr. Berezoski's conviction[s are] reversed, his license stands revoked. As evidence submitted to the Board tends to establish, the probability of reversal is significant and in such case, there would be no basis for any limitation upon his license to practice medicine, let alone a revocation. Consequently, suspending his license, which in all events prevents him from practicing medicine just as effectively as does a permanent revocation, but conditioned upon a reversal, both protects the

public interest and the rights of Dr. Berezoski by assuring him the right to continue in his profession if, and only if, his conviction[s are] reversed.

"For the foregoing reasons, it is submitted that the Hearing Examiner's recommendation of a revocation is not justify [sic] nor is it necessarily based upon the evidence before the Board. The public would be protected just as effectively, without unnecessary trampling of Dr. Berezoski's rights, by a suspension conditioned upon reversal of the criminal conviction[s] as suggested by Dr. Berezoski."

The board met July 10, 1986, and its minutes, as they relate to Berezoski, reveal the following:

"Dr. Rauch asked if each member of the Board had received, read, and considered the hearing record, the proposed findings and order, and any objections filed to the proposed findings and order in the matter of Robert N. Berezoski, M.D. A roll call was taken:

"ROLL CALL:
    Dr. Cramblett — aye;
    Dr. Lancione — aye;
    Dr. Buchan — aye;
    Ms. Rolfes — aye;
    Dr. Rothman — aye;
    Dr. Stephens — aye;
    Mr. Jonston — aye;
    Dr. Rauch — aye.
"* * *

"Lauren Lubow, Assignment and Hearing Attorney, joined the meeting at this time.

"Ms. Lubow read the Conclusions and Proposed Order of her report and recommendation in the above matter, the original of which shall be maintained in the exhibits section of this Journal.

"Dr. Barnes returned to the meeting at this time, and Dr. O'Day joined the meeting at this time.

"Dr. Rauch asked Dr. Barnes and Dr. O'Day if they had received, read, and considered the hearing record, the proposed findings and order, and any objections filed to the proposed findings and order in the matter of Robert N. Berezoski, M.D. They both responded that they had.

"Dr. Lancione moved to approve and confirm Ms. Lubow's findings of fact, conclusions and proposed order in the matter of Robert N. Berezoski, M.D. Ms. Rolfes seconded the motion. A roll call vote was taken:

"ROLL CALL VOTE:
    Dr. Cramblett — abstain;
    Dr. Lancione — aye;
    Dr. Barnes — aye;
    Dr. Buchan — aye;
    Ms. Rolfes — aye;
    Dr. Rothman — aye;
    Dr. O'Day — aye;
    Dr. Stephens — aye;
    Mr. Johnston — abstain.
"The motion carried."

Pursuant to the action of the board, Berezoski's license was revoked, effective July 10, 1986. He appealed to the Court of Common Pleas of Greene County, advancing three assignments of error:

Assignment of Error No. 1:

"It was error prejudicial to the appellant for the State Medical Board to accept as its own findings and order the report and recommendation of a hearing examiner when the only finding of fact contained in said report was a finding of criminal conviction and where the record of the administrative proceeding contained other reliable, probative, and substantial evidence which was not considered by the hearing examiner and which supported the imposition of a range of disciplinary action less severe than permanent revocation of a license."

Assignment of Error No. 2:

"It was error prejudicial to the appellant for the State Medical Board to appoint an attorney hearing examiner

in an administrative proceeding when the attorney is employed and compensated by the Board and when the attorney has been engaged in non-adjudicatory functions tantamount to making her a legal advisor to the Board."

Assignment of Error No. 3:

"It was error prejudicial to the appellant for the State Medical Board to fail to notify appellant or his counsel of the date, time, and place the report and recommendation of the hearing examiner was to be considered by the Board and to afford appellant or his counsel an opportunity to be present."

Prior to the trial court's disposition of the appeal, it was informed that Berezoski's convictions had been affirmed on appeal.

The trial court confined itself to the administrative record in determining the merits of the first and third assignments of error, which it sustained. It is not clear whether the trial court considered the testimony of Lauren Lubow, elicited before the trial court in support of the second assignment of error, which it overruled.

The trial court's sustaining of the first and third assignments of error prompts the board's appeal; its overruling of the second assignment of error prompts Berezoski's cross-appeal.

Of the board's three assignments of error before this court, we first discuss the second:

"The lower court erred as a matter of law in interpreting R.C. 4731.22(B)(9) to require more than proof of conviction of a felony prior to the imposition of discipline."

R.C. 119.12 defines the parameters of the common pleas court's review of administrative proceedings:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

The parties disagree as to whether the trial court held that R.C. 4731.22(B)(9) requires more than proof of a felony conviction prior to the imposition of discipline. Berezoski concedes that a felony conviction suffices for imposition of discipline. He then contends that the trial court did not hold otherwise, but, rather, objectively evaluated all the evidence before the board, whereas the hearing examiner and board improperly confined their considerations to the felony convictions.

In its August 28, 1987 opinion, the trial court, after quoting R.C. 4731.22 (B)(9), stated:

*"The question before this Court in reviewing the statute is whether a conviction per se constitutes reliable, probative and substantial evidence sufficient to support the Order of the Board.* It is clear from the language in the statute that the Medical Board is given broad discretionary powers in disciplining its members.

"It is clear to this Court that if the legislature had wished a more restrictive statute they would have said that a conviction of a felony shall automatically carry a revocation of one's license. The legislature did not do this. In fact, they did not even separate the felony category.

"It is equally clear to this Court that the purpose of the legislature allowing an adjudicatory hearing was to go beyond the conviction itself and look at the Appellant's entire professional and personal record, and in so

doing determine an appropriate discipline.

"* * *

"It is the opinion of this Court that Appellant's assignment of Error No. 1 is well taken and that *the decision of the Medical Board was not supported by reliable, probative and substantial evidence and is not in accordance with law.*" (Emphasis added.)

The fact of the seven felony convictions was beyond question. Revocation is clearly a disciplinary option available to the board where the holder of a medical license is convicted of a felony.

As such, and as a matter of law, the revocation of Berezoski's license was supported by reliable, probative and substantial evidence and was in accordance with law. R.C. 119.12. See *Pioneer Chevrolet-Cadillac, Inc.* v. *Motor Vehicle Dealers Bd.* (1985), 17 Ohio St. 3d 50, 17 OBR 42, 476 N.E. 2d 1057.

Regardless of whether the trial court, in fact, thought the statute required more than a felony conviction, the effect of its holding, *supra,* was that it did. This was error.

While we naturally have no quarrel with *University of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 17 O.O. 3d 65, 407 N.E. 2d 1265, we hasten to point out that *Conrad* involved conflicting evidence as to the facts required for imposition of discipline. Here, there is no such conflict. We fully appreciate Berezoski's contention that the trial court did no more than what the board should have done, *i.e.,* give appropriate consideration to his evidence. His evidence, however, did not controvert the only fact required by the statute for revocation — a felony conviction.

The second assignment of error is sustained.

The board's first assignment of error contends that:

"The lower court erred as a matter of law in considering whether or not the State Medical Board had committed an abuse of discretion."

As with the second assignment of error, the parties disagree as to whether the trial court held that the board had abused its discretion.

From our reading of the record, we believe that Berezoski persuaded the trial court that the board had abused its discretion by ignoring his evidence and imposing the severest discipline. This is reflected by the above-quoted language of the trial court, the trial court's earlier observation in its August 28, 1987 opinion that Berezoski is "a highly qualified" surgeon whose "professional and personal record" prior to the conviction "was unblemished," and its imposition of a lesser sanction. Furthermore, the trial court, from its opinion, understood the scope of review to include abuse of discretion:

"This Court is aware of its duty in an appeal of this nature to first determine whether there was reliable, probative and substantial evidence supporting the order of the Board, and that [*sic*] *whether of [sic] not the Board was guilty of an abuse of discretion.*" (Emphasis added.)

Berezoski has argued strenuously that the hearing examiner approached this case with tunnel vision that could not see beyond the felony convictions, and that the board abdicated its responsibility by rubber-stamping her report and recommendation.

The board does not argue that review for an abuse of discretion by the board, amounting to an abdication of responsibility, is beyond the proper scope of review by the common pleas court. This review, we think, is mandated by the "in accordance with law" language of R.C. 119.12 and, during oral argument, the board agreed.

We do not, however, find such an abuse in this case. The lack of findings

by the examiner as to the credibility and significance of Berezoski's evidence does not mean the hearing examiner ignored that evidence. In her conclusions, she stated that it would be inappropriate to retry the criminal case. Given the fact that Berezoski was found guilty by proof beyond a reasonable doubt by a jury of twelve, this was an appropriate response to Berezoski's evidence, the then purpose of which was to discredit his convictions.

Nor does the record reflect a knee-jerk rubber-stamping of the hearing examiner's report and recommendation by the board. The minutes of the July 10, 1986 meeting of the board, *supra,* reflect that each member affirmatively indicated he had received, read, and considered the hearing record, proposed findings and order, and objections, after which the board voted on the report and recommendation.

In our opinion, the record is more reflective of the hearing examiner's and board's conscientious discharge of their responsibilities than of an abdication of their responsibilities.

The board does argue, and correctly so, that where the administrative order is supported by reliable, probative, and substantial evidence, and is in accordance with law, the common pleas court is not authorized to alter the penalty imposed by the administrative agency. *Henry's Cafe, Inc.* v. *Bd. of Liquor Control* (1959), 170 Ohio St. 233, 10 O.O. 2d 177, 163 N.E. 2d 678; *Farrao* v. *Bureau of Motor Vehicles* (1975), 46 Ohio App. 2d 120, 75 O.O. 2d 106, 346 N.E. 2d 337.

Nevertheless, this is what the common pleas court did. The trial court stated that the board's order was not supported by reliable, probative, and substantial evidence and was not in accordance with law. Somewhat inconsistently, however, the trial court proceeded to impose a lesser sanction rather than vacate the disciplinary order in its entirety. While the language of R.C. 119.12 may authorize modification of penalty under some circumstances, imposition of a lesser sanction, given the uncontroverted fact of the felony convictions, was clearly inappropriate in this case.

As we have indicated, as a matter of law the order of revocation was supported by reliable, probative, and substantial evidence, and was in accordance with law. We have noted that the trial court thought the board's ruling was reviewable for abuse of discretion. The record also reflects a concern by the trial court that revocation was too harsh a penalty. In addition to the references to the trial court's opinion of August 28, 1987, *supra,* the trial court stated from the bench February 20, 1987, in sustaining Berezoski's motion for suspension of the board's order of revocation pending appeal:

"* * * I just feel that this man, who is a ten-year veteran of the United States Air Force, and who is a surgeon who has, up until this one bad situation in his life, and I'm not overlooking that at all — that's there. It's on the record. It will be on the record, but I don't think our system of justice holds a life sentence against someone for one mistake, and therefore, I'm going to grant their motion, and counsel, you will draw the Entry today before we leave, so you can get with the Court Reporter here, and I will grant the Motion for the Suspension of the Suspension, I guess it's called, and the Court will act speedily on the resolution of this Appeal."

The board's order being proper, the trial court erred in modifying the discipline.

The first assignment of error is sustained.

For its third assignment of error the board claims:

"The lower court erred in finding error prejudicial to Dr. Berezoski in regard to the notice given to him as to the meeting of the Board to consider the report and recommendation in regard to Dr. Berezoski."

Berezoski's contention before the trial court was contained in his third assignment of error, *supra*. To be sure, the hearing officer's letter of June 13, 1986, to Berezoski's counsel did not inform him of the time or place of the board's meeting to consider her recommendation. The letter did state consideration of the report and recommendation would be at the board's July 9, 1986 meeting.

The June 13, 1986 letter went beyond the notice requirements of R.C. 119.09, which requires no more than service of the report and recommendation upon a party or his counsel within five days of filing. Here, the letter additionally, and gratuitously, informed Berezoski's counsel of the deadline for objections and the date the board would meet. Although R.C. 119.09 authorizes the board to consider additional evidence, it does not confer a right to be heard at the board's meeting to consider the report and recommendation.

Relying on *Fuentes* v. *Shevin* (1972), 407 U.S. 67, Berezoski contends that due process entitled him to accurate notice of the date, time, and place of the board's meeting and a right to be heard.

What Berezoski ignores, however, is that he had already been accorded a hearing that conformed with constitutional guarantees of due process. He was not deprived of anything he was entitled to under either R.C. 119.09 or the constitutional guarantee of due process.

As a practical matter, we find no basis for complaint. The June 13 letter informed counsel for Berezoski the meeting would be July 9. Had counsel

intended to attend the meeting, the time and place could have been learned with a phone call. Had counsel appeared July 9, he would have no doubt learned that consideration of Berezoski's case would be the following day. The record reveals no effort to attend the board meeting, and as much was conceded at oral argument of this appeal.

The third assignment is sustained.

Berezoski has cross-appealed, asserting the following cross-assignment of error:

"The lower court erred in overruling appellee's assignment of error below on the prejudice inherent in the process of appointing an attorney hearing examiner to preside over the administrative proceedings when the hearing examiner is employed and compensated by the Board, is engaged in non-adjudicatory functions tantamount to making her a legal advisor to the Board, and when she is not insulated from the daily influences of the investigative and prosecutorial staff."

A similar assignment of error was advanced by Berezoski in the trial court.

The evidence supporting this assignment of error, consisting of the testimony of Lauren Lubow, was first produced in this case before the common pleas court.

The board objected to the introduction of the evidence because it was not "newly discovered" and because it supported a constitutional argument that was waived, citing *Bd. of Edn. of South-Western City Schools* v. *Kinney* (1986), 24 Ohio St. 3d 184, 24 OBR 414, 494 N.E. 2d 1109.

Although the trial court initially expressed some doubt as to the admissibility of the testimony, the trial court apparently decided to admit it because the trial court disposed of the assignment of error on the merits. The trial court overruled the assignment of

error, indicating the problem was for the legislature and that the trial court's favorable ruling on Berezoski's first assignment of error justified its overruling this assignment of error.

The trial court could have properly rejected this evidence. Nothing in the record or argument of counsel suggests that evidence of the responsibilities of the hearing officer, Lauren Lubow, and their alleged potential for partiality, could not have been developed and presented at the administrative level.

Nevertheless, we have considered the merits of Berezoski's assignment of error in this court, and overrule it.

Berezoski seeks to portray Lubow's partiality by pointing out that she also serves as spokesperson for the board, has frequent professional and social contact with investigative and prosecutorial personnel, and is paid out of the same personnel account as these other individuals. Supposedly, she is contaminated by her contacts with investigators and prosecutors, and has a financial incentive to be partial.

Berezoski cites *Withrow* v. *Larkin* (1975), 421 U.S. 35, at 58, which provides:

"That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high."

*Withrow* v. *Larkin* involved a situation more extreme than that before us. In considering the ability of the Wisconsin Medical Examining Board to institute investigative procedures and then preside at the adjudicatory hearing, the United States Supreme Court stated:

"No specific foundation has been presented for suspecting that the Board had been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of the evidence to be presented at the contested hearing. *The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing.* Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States* v. *Morgan,* 313 U.S. 409, 421 (1941)." (Emphasis added.) *Id.* at 55.

Here, Lubow testified that she had never worked for the board as an investigator, nor worked with any attorney or investigator on any investigation.

We find nothing in the record to suggest Lubow's impartiality was adversely affected by her several job responsibilities, or exposure to investigative and prosecutorial personnel. Nor do we find any other facts and circumstances creating an intolerably high risk of unfairness. *Id.* at 58.

Berezoski's cross-assignment of error is overruled.

The judgment of the court of common pleas is reversed. The order of the State Medical Board, effective July 10, 1986, revoking the license of Robert N. Berezoski to practice medicine and surgery in the state of Ohio, will be reinstated.

*Judgment reversed.*

WILSON and FAIN, JJ., concur.